IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MADELINE MARTIN, on behalf of herself and all others similarly situated,

    Plaintiff,

    v.

WELLS FARGO BANK, N.A.,

    Defendant.

No. C 12-06030 SI

**ORDER DENYING MOTION TO COMPEL ARBITRATION**

    Defendant Wells Fargo Bank, N.A.'s motion to compel arbitration came on for hearing on November 22, 2013. Docket No. 30. Having considered the arguments of counsel and the papers submitted, the Court DENIES the motion for the reasons discussed below.

**BACKGROUND**

    On November 28, 2012, Plaintiff Madeline Martin filed a class action complaint for damages and injunctive relief against Wells Fargo. Docket No. 1. Plaintiff alleges three causes of action against Wells Fargo in her complaint: (1) knowing and/or willful violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 277 *et seq.*; (2) violations of the Telephone Consumer Protection Act 47 U.S.C. § 277 *et seq.*; and (3) violations of California's Unfair Competition Law, Cal. Bus & Prof Code § 17200, *et seq*. Complt. ¶¶ 1-3. Martin's allegations stem from her claim that Wells Fargo has repeatedly called her cellular telephone without her consent. *Id*. ¶¶ 16-17; Martin Decl. ¶ 3.

On March 7, 2013, Wells Fargo filed a Motion to Compel Arbitration, along with the supporting declarations of Joan Larsen ("Larsen Decl.") and Marcus O'Sullivan ("O'Sullivan Decl."). Docket Nos. 30-32. On August 16, 2013, plaintiff filed an Opposition to defendant's Motion to Compel with the supporting declaration of Madeline Martin ("Martin Decl."). Docket No. 53. On October 2, 2013, Wells Fargo filed its Reply. Docket No. 62.

The parties agree on very little with regard to the facts. The complaint states that Martin received repeated, harassing, prerecorded calls from Wells Fargo at all hours of the day. Complt. ¶ 17. While not mentioned in the complaint, Martin's declaration states that the harassing calls occurred in 2010. Martin Decl. ¶ 3. The specific account the alleged calls were made in reference to is not identified with specificity in either the complaint or Martin's declaration. However, the complaint identifies only one account, a checking account with Wells Fargo that Martin applied for and received in the late 1980s. Complt. ¶ 15. While Martin has opened multiple accounts with Wells Fargo, the personal "Complete Advantage Checking" account Martin applied for and opened on November 4, 1987 is the only checking account she applied for and opened in the late 1980s. O'Sullivan Decl. ¶¶ 3-5. This personal checking account is presumably the account at issue in the present dispute. O'Sullivan Decl. ¶ 5, Complt. ¶ 15.

Martin's account was subject to the terms set forth in the "Consumer Disclosure Statement," effective June 1, 1987. O'Sullivan Decl. ¶ 6. The 1987 Consumer Disclosure Statement did not contain an arbitration clause, nor did it refer to the possibility that an arbitration clause might be added at a later date. It did include the following language on the first page: "NOTICE–We reserve the right to change any of the charges, fees or other information contained in this disclosure. However, we will send you a notice at least 15 days before the effective date of any change in charges, fees, or interest computation." O'Sullivan Decl., Exh.G.

Wells Fargo contends that the 1987 Consumer Disclosure Statement, as it applies to plaintiff, was amended by way of a billing statement insert prepared in December, 2011 and "effective February

2

15, 2012." Larsen Decl. ¶ 5.[1] The billing statement insert, entitled "Important Change in Terms Notice," includes the text of the arbitration provision Wells Fargo now seeks to enforce. Larsen Decl. ¶ 6. According to Wells Fargo, the arbitration provision included in the insert was also published online as a disclosure that Martin would have received upon logging into her account at www.wellsfargo.com any time between December 1, 2011 and May 31, 2012. Larsen Decl. ¶ 7. Wells Fargo presents no evidence that Martin did log in to the account during that time frame.

The arbitration provision states:

> If you have a dispute with the Bank, and you are not able to resolve the dispute informally, you and the Bank agree that upon demand by either you or the Bank, the dispute will be resolved through the arbitration process as set forth in this part. A "dispute" is any unresolved disagreement between you and the Bank. It includes any disagreement relating in any way to *services*, accounts or matters; to your use of any of the Bank's banking locations or facilities; or to any means you may use to access your account(s). It includes claims based on broken promises or contracts, torts or other wrongful actions. It also includes statutory, common law and equitable claims.

Larsen Decl., Ex. A.[2]

Martin denies ever receiving or seeing the "Important Change in Terms Notice" or any other notice pertaining to arbitration. Docket No. 53-1, Marin Decl. ¶ 4. She further maintains she did not see the notice on her online Wells Fargo account and has no recollection of logging in to her online account between December 1, 2011 and May 31, 2012. *Id*. ¶ 5.

Relying upon the terms of the arbitration provision, Wells Fargo now seeks to compel arbitration of Martin's claims. Docket No. 30.

**DISCUSSION**

To determine whether there is an enforceable arbitration agreement between Martin and Wells Fargo the Court "should apply ordinary state-law principles that govern the formation of contracts" to ascertain whether the parties have agreed to some alternative form of dispute resolution. *Circuit City*

---

[1] Wells Fargo also asserts – without explanation – that plaintiff's account is now governed by a "2012 Consumer Account Agreement (effective October 15, 2011)." O'Sullivan Decl., ¶ 7 and Ex. I. Wells Fargo has provided no information regarding whether, when or how notice of the "2012 Consumer Account Agreement (effective October 15, 2011)" was provided to Martin.

[2] Wells Fargo notes the language contained in the billing statement insert and online disclosure can also be found in the 2012 Consumer Account Agreement. O'Sullivan Decl., Ex. I.

3

*Stores, Ind. v. Adams* 279 F.3d 889, 892 (9th Cir. 2002) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Under California and federal law, arbitration is a matter of contract between the parties. *See Rent-A-Center, West, Inc. v. Jackson*, 130 S.Ct. 2272, 2776 (2010). As such, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960) (internal quotation mark omitted)). Pursuant to California Civil Code § 1698, a written contract "may expressly provide for modification." The California Court of Appeal has explained that "a modification made 'in accordance with the terms of the contract' means, at least in part, a modification whose general subject matter was anticipated when the contract was entered into." *Badie v. Bank of America*, 67 Cal. App. 4th 779, 792 (1998); *see also Busch v. Globe Indus.*, 200 Cal. App. 2d 315, 320 (1962) ("When a modification is in accordance with a provision authorizing and setting forth a method for its revision the rule that a contract in writing may be altered only be another written contract or an executed oral agreement has no application because there is no alteration."). The party seeking to compel arbitration bears the burden of proving the existence of the arbitration agreement by a preponderance of the evidence. *Rosenthal v. Great W. Fin. Sec. Corp.,* 926 P. 2d 1061, 1072 (Cal. 1996).

Wells Fargo maintains the 2012 Consumer Account Agreement– and the arbitration clause contained therein – governs this dispute and supersedes the 1987 agreement. Motion to Compel p. 2. As noted above, the record does not contain evidence that demonstrates that the 1987 agreement has in fact been superseded by the 2012 Consumer Account Agreement. However, there is evidence in the record concerning the arbitration clause on the billing statement insert, and the Court therefore considers that to be the primary basis of Wells Fargo's motion to compel arbitration.

Wells Fargo argues 1987 agreement expressly allows the bank to add new terms, rights, and obligations and because Martin was notified of the changes, the modifications to her agreement were made in accordance with the contract terms and are therefore valid. Motion to Compel p. 3; Reply p. 6. Implicit in this argument is the assumption that by entering into the 1987 agreement, Martin assented to future changes to her account, including the addition of an arbitration agreement. Martin contends the 1987 agreement allowed only for amendments to terms existing at the time of the initial contract and

4

that the notice provided to her was insufficient. Opposition p. 7.

Wells Fargo, the party seeking to compel arbitration, bears the burden of proving the existence of the arbitration agreement by a preponderance of the evidence. *See Rosenthal,* 926 P. 2d at 1072. On this record, Wells Fargo treats the question of whether it provided sufficient notice to Martin casually, relying upon a declaration that Martin was notified of the arbitration provision "via a mailing insert that she was targeted to receive in December, 2011" and an online message "she would have received upon logging into her account." Motion to Compel p. 3; Larsen Decl. ¶ 6-7. Wells Fargo supports its position with the Larsen Declaration, which states only that Martin's account "was on the list targeted to receive this insert." Larsen Decl. ¶ 6. In making this declaration, Larsen reviewed only Wells Fargo's "TeamTrack system that archives the contents of messages generated on the face of statements and the list of accounts that were targeted to receive those messages." *Id*. Larsen does not rely upon evidence that an insert was actually mailed to Martin and stops short of making a definitive statement the insert containing the arbitration provision was mailed. She states only that Martin "was targeted to receive" the insert. *Id*. Wells Fargo has not provided the Court with any legal precedent to support the premise that "targeting" an individual to receive a mailing constitutes proper notice. As to the online notification, Martin maintains she did not see the notification on her online account, nor does she recall logging in to the online account during the period Wells Fargo asserts the notice was displayed online. Martin Decl. ¶ 5. Wells Fargo has not yet produced evidence to contradict Martin's position. As to the online notification, the Larsen declaration states only that the disclosure was published online as a message Martin "would have received upon logging into her account" but not that Martin actually did log in and see the disclosure. Larsen Decl. ¶ 7. On the present record at this stage in the proceedings, Wells Fargo has not met its burden to demonstrate Martin received proper notice of the changes to her account agreement.

Another question is raised as to whether the addition of the arbitration agreement is a fair amendment to Martin's 1987 agreement with Wells Fargo. The terms of the 1987 agreement state: "NOTICE–We reserve the right to change any of the charges, fees or other information contained in this disclosure. However, we will send you a notice at least 15 days before the effective date of any change in charges, fees, or interest computation" O'Sullivan Decl., Exh. G. Reading this provision in its

5

entirety, "charges, fees or other information" is structured in parallel to, and thus appears to mean, "charges, fees or interest computation." It therefore appears that the addition of an arbitration provision is not a change to "charges, fees, or other information," the only aspects of the 1987 agreement Wells Fargo reserved the right to change. There are no arbitration provisions within the 1987 agreement nor are there references to any form of alternative dispute resolution. The original terms do not indicate the addition of an arbitration agreement was "a modification whose general subject matter was anticipated when the contract was entered into." *Badie*, 67 Cal. App. 4th at 792. Had Wells Fargo, the drafting party, intended its initial agreement to allow for the subsequent addition of an arbitration provision, it could have included those terms within the 1987 agreement.

## CONCLUSION

The Court finds that Wells Fargo has failed to prove, by a preponderance of the evidence, that proper notice was provided to Martin as to an addition of an arbitration agreement to her original consumer agreement. Wells Fargo has yet to prove the existence of a valid arbitration agreement with Martin. *See Rosenthal,* 926 P. 2d at 1072. Defendant's motion to compel is DENIED.

**IT IS SO ORDERED.**

Dated: December 2, 2013

SUSAN ILLSTON
UNITED STATES DISTRICT JUDGE